UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEAN LEONEL AMAZAN (A-241-861-633), Petitioner, v. CHRISTOPHER CHESTNUT, Respondent. | No. 1:26-cv-8100 DAD CSK<br><br>FINDINGS AND RECOMMENDATIONS |

Petitioner Jean Leonel Amazan (A-241-861-633), a native and citizen of Haiti who is proceeding without counsel, filed a verified petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1] In August 2022, petitioner entered the United States and was released by immigration authorities into the United States on a Form I-94. On August 27, 2026, petitioner was arrested while leaving work, detained by immigration officials, and has been in continuous detention since this date. This habeas action concerns petitioner's immigration detention. For the reasons that follow, the Court recommends granting the petition for a writ of habeas corpus and ordering petitioner's immediate release.

///

[1] This matter proceeds before the undersigned pursuant to 28 U.S.C. § 636, Fed. R. Civ. P. 72, and Local Rule 302(c)(17).

## I. FACTUAL BACKGROUND[2]

Petitioner is a citizen and native of Haiti. (ECF No. 1 at 6.) In August 2022, petitioner entered the United States and turned himself over to Immigration and Customs Enforcement ("ICE"). (Id.) Petitioner was released into the United States with an I-94, a form issued by the Department of Homeland Security ("DHS") to noncitizens who are admitted to the United States, adjusting status while in the United States, or extending their stay in the United States. (Id.) Petitioner subsequently obtained a work permit, driver's license, and Social Security card. (ECF No. 1 at 6.) On August 27, 2026, while leaving work, petitioner was arrested and detained by ICE. (Id.) Petitioner has no criminal record. (Id.)

On August 28, 2026, petitioner was issued a Notice to Appear in Immigration and Nationality Act ("INA") Section 240 (8 U.S.C. § 1229a) removal proceedings, which are standard removal proceedings. (ECF No. 5 at 5.) The Notice to Appear alleges that upon arrival in 2022, petitioner was paroled into the United States for one year.[3] (Id.)

Petitioner has been in continuous detention since August 27, 2026. (Id.) Respondent does not contest petitioner's factual allegations. (See ECF No. 5.)

## II. PROCEDURAL BACKGROUND

On October 2, 2026, petitioner filed the petition for writ of habeas corpus. (ECF No. 1.) On October 6, 2026, this Court issued a briefing order. (ECF No. 4.) On October 13, 2026, respondent timely filed an answer and opposition to the petition. (ECF No. 5.) Petitioner did not file a reply. (See Docket.) Briefing is now complete.

## III. LEGAL STANDARDS

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in

---

[2] Petitioner filed a verified habeas petition. (ECF No. 1 at 8.) A court "may treat the allegations of a verified . . . petition [for writ of habeas corpus] as an affidavit." L. v. Lamarque, 351 F.3d 919, 924 (9th Cir. 2003) (citing McElyea v. Babbitt, 833 F.2d 196, 197-98 (9th Cir. 1987)).

[3] Removal proceedings pursuant to 8 U.S.C. § 1229a (INA § 240) are standard removal proceedings, which are different from expedited removal proceedings pursuant to 8 U.S.C. § 1225(b)(1) (INA § 235(b)(1)).

custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. See Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

## IV. DISCUSSION

Generally, noncitizens are subject to civil immigration detention only if the noncitizen presents a risk of flight or danger to the community. See Zadvydas, 533 U.S. at 690 (holding that 8 U.S.C. § 1231(a)(6) does not authorize indefinite detention). Because petitioner is proceeding pro se and pro se pleadings are liberally construed, the Court construes the petition challenging his detention as raising a due process claim under the Fifth Amendment.[4] (See ECF No. 1.) In response to the petition, respondent appears to have construed the petition to raise a due process claim. (ECF No. 5 at 2.) Therefore, there is no prejudice to respondent in the Court's construction. (See ECF No. 1.) Respondent does not argue that petitioner is a flight risk or a danger to the community and instead argues that petitioner is the "quintessential arriving alien and applicant for admission," as he was paroled into the United States at the border. (ECF No. 5 at 1.) Respondent contends petitioner's detention is mandatory under 8 U.S.C. § 1225(b)(2) and he is ineligible for a bond hearing. (Id. at 2.) Respondent cites Avila v. Bondi, 170 F.4th 1128 (8th Cir. 2026) and Buenrostro-Mendez v. Bondi, 166 F.4th 494 (5th Cir. 2026), in support of their position that § 1225(b)(2)(A) is applicable here. (Id.) Respondent also argues that petitioner does not possess a right to freedom from immigration detention in any form other than the form

---

[4] In the claims section of his petition, petitioner sets forth his factual allegations supporting his petition. (ECF No. 1 at 6.) In the relief section, petitioner asserts a violation of his due process rights. (Id. at 7.) Because petitioner is proceeding pro se and pro se pleadings are liberally construed, the Court construes the petition as alleging a violation of petitioner's due process rights under the Fifth Amendment.

provided by Congress. (Id.) Despite such arguments, respondent concedes "this case is in the category of immigration habeas cases for which the Court has typically ordered immediate release on due process grounds." (Id.)

**A. Statutory Framework**

This Court must first decide whether petitioner, who has no criminal record and has lived in the United States since August 2022, is subject to mandatory detention under § 1225(b)(2)(A), as respondent argues. 8 U.S.C. § 1225(b)(2) mandates detention during removal proceedings for applicants "seeking admission" and does not provide for a bond hearing. 8 U.S.C. § 1226(a) "provides the general process for arresting and detaining [noncitizens] who are present in the United States and eligible for removal." Rodriguez Diaz v. Garland, 53 F.4th 1189, 1196 (9th Cir. 2022). Under § 1226(a), the government makes an initial custody determination, and the noncitizen will be released upon a showing "to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding." Rodriguez Diaz, 53 F.4th at 1196 (citing 8 C.F.R. § 236.1(c)(8)). Section 1226(a) provides "an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change." Id. at 1202. Therefore, "[i]f the noncitizen is detained under section 1226(a), she is entitled to a bond hearing." Labrador-Prato v. Noem, 2025 WL 3458802, at *3 (E.D. Cal. Dec. 2, 2025) (citing Jennings v. Rodriguez, 583 U.S. 281, 306 (2018)). Respondent contends § 1225(b)(2)(A) applies because petitioner is an "applicant for admission" and therefore subject to mandatory detention. (ECF No. 5 at 1.)

In Rodriguez Vazquez v. Bostock, 183 F.4th 1160 (9th Cir. 2026), the Ninth Circuit rejected respondent's argument, concluding that noncitizens "present without admission who are apprehended in the interior of the United States are subject to the detention regime of § 1226, not § 1225(b)(2)(A)." 183 F.4th at 1165. The majority of courts nationwide agree, rejecting respondent's new interpretation[5] of Sections 1225 and 1226. See, e.g., Barbosa da Cunha v.

---

[5] Until DHS changed its policy in July 2025, the Government consistently applied Section 1226(a), not Section 1225(b)(2), to noncitizens residing in the United States who were detained

Freden, 175 F.4th 61 (2d Cir. 2026); Lopez-Campos v. Raycraft, et al., 175 F.4th 713, 735 (6th Cir. 2026); Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami, 175 F.4th 1258, 1285 (11th Cir. 2026); Castañon-Nava v. U.S. Dep't of Homeland Sec., 161 F.4th 1048, 1060-62 (7th Cir. 2025); J.Y.L.C. v. Bostock, 2025 WL 3169865, at *2 (D. Or. Nov. 12, 2025) (collecting cases rejecting the government's assertion that § 1225 empowers DHS to arrest and hold a noncitizen present without legal status who has spent years in the U.S.); Cardona-Lozano v Noem, 2025 WL 3218244, at *6 (W.D. Tex. Nov. 14, 2025) ("Repeatedly, [district courts across the country] have found that DHS and the [Board of Immigration Appeals'] construction of the [Immigration and Nationality Act] is incorrect and that petitioners who have long resided in the United States but are being held under § 1225 are entitled to relief.") (collecting cases)); Faizyan v. Casey, 2025 WL 3208844, at *5 (S.D. Cal. Nov. 17, 2025) (holding that § 1226 applies to a petitioner who "DHS has consistently treated" as subject to discretionary detention and "who has been residing in the United States for two years" (internal quotation marks and citation omitted)); Josue I.C.A. v. Lyons, 2025 WL 3496432, at 3 n.6 (E.D. Cal. Dec. 5, 2025) (collecting cases); Morales-Flores v. Lyons, 2025 WL 3552841, at *3 (E.D. Cal. Dec. 11, 2025) (collecting cases) ("Courts nationwide, including this one, have overwhelmingly rejected the government's arguments and found DHS's new policy unlawful."); Guerro Lepe v. Andrews, 2025 WL 2716910, at *4 (E.D. Cal. Sept. 23, 2025) (collecting cases).

Therefore, respondent's argument that petitioner is an "applicant for admission" subject to § 1225(b)(2)(A) fails. This Court finds that petitioner is detained under 8 U.S.C. § 1226(a) and its implementing regulations because petitioner was expressly released on his own recognizance, he has resided in this country for over four years since his release in August 2022, and petitioner's August 2026 arrest and detention were not upon arrival to the United States. "Federal regulations provide that [noncitizens] detained under § 1226(a) receive bond hearings at the outset of detention." Jennings, 583 U.S. at 306 (citing 8 C.F.R. § 236.1(d)(1)). If, at this hearing, the detainee demonstrates that he or she is not "a threat to national security, a danger to the

---

by immigration authorities and subject to removal. See Rodriguez Diaz, 53 F.4th at 1196.

community at large, likely to abscond, or otherwise a poor bail risk," the immigration judge will order his or her release. Rodriguez Diaz v. Garland, 53 F.4th at 1197 (citing Matter of Guerra, 24 I. & N. Dec. 37, 40 (B.I.A. 2006)). As such, petitioner should have been provided a bond hearing before re-detention.

**B. Petitioner's Due Process Claim for Relief**

Liberally construed, petitioner alleges he has a fundamental liberty interest in freedom from imprisonment pursuant to the Fifth Amendment and has a liberty interest in not being incarcerated after prior release without pre-custodial hearing or notice. (ECF No. 1 at 6-7.) Respondent argues petitioner's due process claim fails because petitioner does not possess a right to freedom from immigration detention in any form other than the form provided by Congress. (ECF No. 5 at 2.) Respondent's arguments do not demonstrate the government has satisfied the requirements of the Due Process Clause, "which of course constitute[s] the supreme law of the land[.]" Tot v. United States, 319 U.S. 463, 472 (1943) (Black, J., concurring).

The Due Process Clause protects persons in the United States from being deprived of life, liberty, or property without due process of law. U.S. Const. amend. V. "It is clear that commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." Foucha v. Louisiana, 504 U.S. 71, 80 (1992). "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas, 533 U.S. at 693. "The Due Process clause applies to noncitizens in this country in connection with removal proceedings, even if their presence is unlawful or temporary." Tinoco v. Noem, 818 F.Supp.3d 1141, 1151 (E.D. Cal. Dec. 14, 2025) (citing Zadvydas, 533 U.S. at 690).

The Court analyzes petitioner's due process claim "in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." Garcia v. Andrews, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989)). The Supreme Court has found that a protected liberty interest may arise from a conditional release from physical restraint.

Young v. Harper, 520 U.S. 143, 147-49 (1997). Even when a statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute. See id. (finding due process requires pre-deprivation hearing before revocation of preparole); Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973) (same, in probation context); Morrissey v. Brewer, 408 U.S. 471, 482 (1972) (same, in parole context). To determine whether a specific conditional release rises to the level of a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by Morrissey." Gonzalez-Fuentes v. Molina, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).

In Morrissey, the Supreme Court explained that parole "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." Morrissey, 408 U.S. at 482. "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring, his "condition is very different from that of confinement in a prison." Id. "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." Id. The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." Id. (quotations omitted). Therefore, a parolee possesses a protected interest in his "continued liberty." Id. at 481-84.

Here, petitioner's initial detention and subsequent release on his own recognizance in August 2022 are similar because it allowed petitioner to live in the United States, subject to immigration supervision, but free of custody for over four years. Such time allowed petitioner to form "enduring attachments of normal life." Morrissey, 408 U.S. at 482. Petitioner obtained work authorization, worked and paid taxes. (ECF No. 1 at 6.) This Court finds that petitioner's original release and time out of custody gave rise to a constitutionally protected liberty interest.

Petitioner's release was premised upon a finding that, at the time of petitioner's release, he was not dangerous or a flight risk. See 8 C.F.R. § 1236.1(c)(8) ("Any officer authorized to issue

a warrant of arrest may, in the officer's discretion, release an alien not described in [8 U.S.C. § 1226](c)(1), under the conditions at section [8 U.S.C. § 1226](a)(2) and (3) of the Act; provided that the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding."); Saravia v. Sessions, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), aff'd sub nom. Saravia for A.H. v. Sessions, 905 F.3d 1137 (9th Cir. 2018); F.M.V. v. Wofford, 2025 WL 3083934, at *1 (E.D. Cal. Nov. 4, 2025). In light of all of the foregoing, the Court finds that petitioner's prior release created a reasonable expectation that he would be entitled to retain his liberty as long as he was not a flight risk and did not pose a danger to the community. See Perry v. Sindermann, 408 U.S. 593, 601-03 (1972) (finding reliance on governmental representations may establish a legitimate claim of entitlement to a constitutionally-protected interest); F.M.V., 2025 WL 3083934 at *4-5; Guillermo M. R. v. Kaiser, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is inherent in the Due Process Clause"); Ortega v. Kaiser, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding that noncitizens who have been released have a strong liberty interest).

Next, the Court turns to what procedures are necessary to ensure that the deprivation of that protected liberty interest meets the demands of the Constitution. The Ninth Circuit has "regularly applied Mathews [v. Eldridge, 424 U.S. 319 (1976)], to due process challenges to removal proceedings." Rodriguez Diaz v. Garland, 53 F.4th at 1206; see also Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (applying Mathews factors in immigration detention context). In applying the Mathews test to a procedural due process claim challenging immigration detention, the Ninth Circuit explained that "Mathews remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context." Rodriguez Diaz, 53 F. 4th at 1206-07 (citations omitted). Under Mathews, the Court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation; and (3) the government's interest. Mathews, 424 U.S. at 335.

///

First, petitioner has a clear interest in remaining free from detention. "Freedom from imprisonment -- from government custody, detention, or other forms of physical restraint -- lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690 (citing Foucha, 504 U.S. at 80 ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause.); Hernandez, 872 F.3d at 981 ("[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process."). For over four years, petitioner was free from custody before re-detention. Petitioner also obtained work authorization, worked, and paid taxes. (ECF No. 1 at 6.) The duration of his conditional release elevates and underscores his interest in liberty. See Pinchi v. Noem, 792 F. Supp. 3d 1025, 1033 (N.D. Cal. July 24, 2025) (in the past five years, petitioner developed "extensive relations of support and interdependence" that "underscore the high stakes of [his] liberty.").

The second Mathews factor also weighs in petitioner's favor. "The risk of an erroneous deprivation [of liberty] is high" when "[the petitioner] has not received any bond or custody redetermination hearing." See A.E. v. Andrews, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Again, civil immigration detention, which is "nonpunitive in purpose and effect[,]" is typically justified under the Due Process Clause only when a noncitizen presents a risk of flight or danger to the community. See Zadvydas, 533 U.S. at 690; Padilla v. ICE, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023). Respondent does not contend that petitioner is or was a flight risk or a danger to the community. (See generally ECF No. 5.) In addition, respondent does not contend that petitioner has a criminal record. (Id.) Here, petitioner has been detained since August 2026, without being given an individualized bond hearing to evaluate whether petitioner is a flight risk or a danger to the community. No neutral arbiter has determined whether petitioner is a flight risk or a danger to the community.

As to the third Mathews factor, this Court recognizes that the government has an interest in enforcing immigration laws, but respondent's interest in detaining petitioner without a hearing is "low." Ortega v. Bonnar, 415 F. Supp. 3d 963, 970 (N.D. Cal. Nov. 19, 2019); Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. Mar. 3, 2025). Detention hearings in immigration courts are routine and impose a "minimal cost." Doe, 787 F. Supp. 3d at 1094. In addition, here, the

government's interest is even lower because petitioner was previously released on his own recognizance after immigration officials determined he was not a flight risk or danger to the community, he lived in the country for over four years on release, and he has no criminal record. See Pinchi, 792 F. Supp. 3d at 1036.

Overall, balancing these factors, the Court finds that the Mathews factors weigh in favor of finding petitioner is entitled to a bond hearing, and petitioner should have been provided such a hearing before he was detained. "An essential principle of due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (internal quotation marks and citation omitted) (emphasis added). In criminal cases, parolees released on parole, which does not provide "absolute liberty," but rather "conditional liberty properly dependent on observance of special parole restrictions," are also entitled to due process, including a predeprivation hearing before their parole can be revoked. Morrissey, 408 U.S. at 480-86. "Numerous district courts have held that these principles extend to the context of immigration detention." F.M.V., 2025 WL 3083934 at *6 (collecting cases). Respondent points to no reasons a pre-deprivation hearing could not be held, and provided no evidence of "urgent concerns," thus, "a pre-deprivation hearing is required to satisfy due process." Guillermo M. R. v. Kaiser, 791 F. Supp. 3d at 1036. Accordingly, the Court finds that petitioner is also entitled to relief on the due process claim and should be immediately released from custody.

## V. CONCLUSION

In summary, the Court recommends that the petition for writ of habeas corpus be granted. Accordingly, IT IS HEREBY RECOMMENDED that:

1. The petition for writ of habeas corpus (ECF No. 1) be GRANTED.
2. Respondent be ordered to IMMEDIATELY release petitioner Jean Leonel Amazan (A-241-861-633) and be ordered to provide petitioner with a copy of the release order at or near the time of release. If respondent has custody of petitioner's personal possessions and documents (e.g., identification, passport, work permit, Social Security card, etc.), respondent shall return those to petitioner at the time of release.

3. Respondent be ENJOINED AND RESTRAINED from re-detaining petitioner unless the government demonstrates, by clear and convincing evidence at a pre-deprivation constitutionally adequate bond hearing before a neutral decisionmaker, that petitioner is a flight risk or danger to the community such that physical custody is legally justified. This injunction does not address other circumstances where detention authority is established under different authority than what is presented in this case (e.g., 8 U.S.C. § 1226(c) or 8 U.S.C. § 1231).
4. Given petitioner's pro se status, respondent be directed to file, within **seven days** of the adoption of these findings and recommendations, a status report addressing petitioner's status.
5. The Clerk of the Court be directed to enter judgment in favor of petitioner and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **seven days** of the date of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within **seven days** after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>See</u> <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated: October 27, 2026

CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

/1/amaZ8100.2241.imm.RELEASE